**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

COURTNEY EALY,

      Petitioner,

      v.

JOHN BARWICK, Warden of Pinckneyville
Correctional Center,[1]

      Respondent.

No. 1:24-CV-11453

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

Back in 2016, Courtney Ealy was convicted of first-degree murder and sentenced to 38 years' imprisonment. R. 18, Am. Pet. at 1.[2] He argues that he is entitled to habeas relief, 28 U.S.C. § 2254, because he should have been tried separately from his co-defendant, and his counsel at trial and on direct appeal were ineffective for not pressing that theory. *Id.* at 14–26. For the following reasons, Ealy's petition is denied, and no certificate of appealability shall issue.

---

[1]"[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held," *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)), so the Court substitutes John Barwick as the proper respondent under Civil Rule 25(d). *See* R. 58, Mot. for Status; *see also* Ill. Dep't of Corr., *Individual in Custody Search*, https://idoc.illinois.gov/offender/inmatesearch.html (last visited Aug. 4, 2026).

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. Unless otherwise noted, citations are to the PDF page numbers of each filing. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241.

## I. Background

When considering habeas petitions, federal courts "focus on the decision of the last state court to rule on the merits of petitioner's claim." *Jewell v. Boughton*, 90 F.4th 1199, 1202 (7th Cir. 2024) (cleaned up).[3] And federal courts presume as correct the state court's factual findings, unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 571 U.S. 12, 18 (2013). Court thus draws relevant details from the factual background in the Illinois Appellate Court's opinion affirming the dismissal of Ealy's post-conviction petition. *People v. Ealy*, 249 N.E.3d 964 (Ill. App. Ct. 2024).

### A. The Offense of Conviction

On February 21, 2014, Ealy attended a party with others at the Wentworth Gardens housing project. *Ealy*, 249 N.E.3d at 969. After Ealy left in a car with Clint Massey and T'Keyah Herbert, others who remained at the party began an argument that ended with someone firing gunshots into the air that did not hit anyone. *Id.* Kaprice Johns, one of the party's attendees, then departed in another car with a group of others that included Germontay Carpenter and Jasmine Brown. *Id.* Using speakerphone, Carpenter called either Ealy or Massey to tell them about the altercation, and Brown recognized the voice on the other end as Ealy. *Id.*

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Ealy's party met up in a parking lot with Johns's group as well as a third vehicle. *Ealy*, 249 N.E.3d at 969. The three cars then drove back toward the party location, where they encountered a taxi driver, Javan Boyd, who was dispatched to pick someone up early on the morning of February 22. *Id.* at 969–70. Ealy, Massey, and a third person got out of one car and approached Boyd. *Id.* at 970. (Surveillance footage helps to identify Ealy and Massey, who were wearing distinctive clothes on this night. *Id.* at 969–70.) After some conversation, someone shot Boyd (on camera, "a bright flash of light" appeared near Ealy's hand), and the three cars drove off. *Id.* at 970.

Ealy, Brown, and Johns met up again some time later when Ealy asked Johns to drive him back to the shooting scene to retrieve his phone. *Ealy*, 249 N.E.3d at 970. On the way, Ealy told her that he asked Boyd whether he was from the part of Wentworth Gardens where the party was, which Boyd confirmed. *Id.* Ealy also used the phrase "man down," which Johns took to mean that Boyd was dead. *Id.*

Back at the scene, police officers had already cordoned off the area, and Johns stated to one officer that she lost her phone after hearing gunshots, used a fake name to identify herself, and gave that officer the number (Ealy's) associated with the phone. *Ealy*, 249 N.E.3d at 970–71. Police recovered the phone in the street near Boyd's vehicle, obtained a warrant, and conducted a data extraction that confirmed the number was the one given by Johns and belonged to Ealy. *Id.* at 971. The police also found Ealy's fingerprint on Boyd's passenger-side window as well as several firearm cartridge cases and bullets. *Id.*

**B. Jury Trial**

The State charged Ealy and Massey with first-degree murder. *Ealy*, 249 N.E.3d at 971. With a joint trial looming, Ealy's counsel moved to sever Ealy's case from Massey's. *Id.* at 976. When the trial court asked what the basis would be for severance, Ealy's counsel answered, "We're just moving to make a motion for severance. That's our sole basis." *Id.* The State argued in response that neither Ealy nor Massey gave statements in this case and that all of the evidence would be relevant to both defendants. *Id.* After the State represented that there were not antagonistic defenses, the trial court denied Ealy's motion for severance. *Id.*

At trial, the State's opening statement did not focus on Ealy or Massey specifically but rather attributed Boyd's death to both of them. *Ealy*, 249 N.E.3d at 977–78. Conversely, Massey's attorney focused in his opening statement on the lack of evidence tying Massey to the shooting scene. *Id.* at 978. Likewise, Ealy's counsel also argued that relatively little evidence linked Ealy to the crime. *Id.*

Herbert testified early in the case on behalf of the State. R. 41-17, Exh. 16, Report of Proceedings at 5–6. Herbert stated that she saw Ealy and Massey open Boyd's passenger-side door and that Massey fired the gun four or five times. *Ealy*, 249 N.E.3d at 970.

Johns later testified for the State. On direct examination, Johns stated that Carpenter made a call but that she could not hear with whom. Report of Proceedings at 505:18–506:2. She added that, after the large group convened in the parking lot, they determined to return to the party "to deal with the matter." *Id.* at 508:9–14.

4

Johns testified that she saw Ealy and Massey approach Boyd's car together and have a conversation; afterwards, she saw and heard gunshots but could not see a gun. *Id.* at 511:4–513:17. She then recounted leaving and returning to the scene with Ealy, who said "man down" in reference to Boyd being shot. *Id.* at 516:16–520:20. Johns also described how, when speaking with police officers at the scene, she used a false name and made up details about the shooting. *Id.* at 523:23–525:6. She testified further that, later when she was speaking with police detectives, she identified Ealy as the shooter. *Id.* at 531:1–13; *Ealy*, 249 N.E.3d at 970.

Massey's counsel then cross-examined Johns. First, he confirmed with Johns that Massey was not at the apartment party when the initial shots were fired. *Ealy*, 249 N.E.3d at 978. Johns then testified that she was upset about the gunshots and, after initially leaving the party, wanted to return to "take care of business"; that she and Ealy returned to the scene of the shooting for his phone, during which she lied to the police; and that she was later in police custody for 72 hours and threatened with criminal charges if she did not tell officers what happened. *Id.* Finally, Massey's counsel confirmed that Johns "spoke to" Ealy, but not Massey, after the shooting and that she never saw Massey with a firearm. *Id.*

Ealy's trial counsel pursued similar questions. Ealy's counsel focused on Johns's lies to the police, her 72-hour detention, and the looming charge she faced for this case. *Ealy*, 249 N.E.3d at 978. And Ealy's counsel too confirmed with Johns that her client was not at the party when shots were fired and that Johns could not tell who Carpenter had called while leaving the party. Report of Proceedings at 557:5–

5

16, 558:11–15. When Massey's counsel briefly re-cross-examined Johns, the focus was on her lies to the police. *Ealy*, 249 N.E.3d at 978.

Brown testified next. On direct examination by the State, she stated that Carpenter called Massey before the group convened in a parking lot. Report of Proceedings at 587:11–588:8. When Ealy's counsel cross-examined her, Brown confirmed that Ealy and Massey had already left the party when the initial shots were fired. *Id.* at 608:3–9. Massey's counsel then cross-examined Brown to clarify whether Carpenter spoke on the phone to Massey (as Brown had testified on direct) or instead to Ealy (as she told investigators). *Id.* at 620:10–621:13. Brown ultimately stated that she was not sure whom Carpenter had called, but that she knew that Ealy and Massey were together when Carpenter called one of them. *Id.* She later testified, still being cross-examined by Massey's counsel, that she recognized Ealy's voice on the other end of the call. *Id.* at 622:3–6. Massey's counsel also asked Brown about the lies that Johns told to the police and that Brown initially repeated to investigators. *Id.* at 634:9–635:3.

After several days of testimony, the parties made their closing arguments. The State pressed its theory that Ealy and Massey jointly were responsible for Boyd's death. *See Ealy*, 249 N.E.3d at 978; Report of Proceedings at 974:8–12, 975:3–5, 976:2–13, 977:15–981:8. Ealy's counsel argued that Johns and Brown were unreliable and had incentive to lie, Report of Proceedings at 982:20–987:22, and counsel contended that no evidence demonstrated that Ealy (or Massey) fired the gun to kill Boyd, *Ealy*, 249 N.E.3d at 978–79; Report of Proceedings at 985:14–986:1. Massey's

6

counsel too highlighted that no evidence implicated his client, *Ealy*, 249 N.E.3d at 979; Report of Proceedings at 989:6–992:13, and that Johns had reason to lie, Report of Proceedings at 992:16–993:7, 994:1–19.

The jury found Ealy and Massey guilty of first-degree murder and only Massey guilty of commission of first-degree murder while armed with a firearm. *Ealy*, 249 N.E.3d at 971. Ealy renewed his severance argument in a motion for a new trial, arguing that he had to defend not only against the State's case but also against Massey's in violation of the Fifth, Sixth, and Fourteenth Amendments of the Constitution. *Ealy*, 249 N.E.3d at 976; R. 41-14, Exh. 14-1, Common Law Record at 196–97. The trial court denied this post-trial motion, Common Law Record at 192, and sentenced Ealy to 38 years' imprisonment, *Ealy*, 249 N.E.3d at 968. His conviction and sentence were affirmed on direct appeal. *People v. Ealy*, 130 N.E.3d 28 (Ill. App. Ct. 2019), *pet. for leave to appeal denied*, *People v. Ealy*, 132 N.E.3d 286 (Ill. Sep. 25, 2019) (unpublished table decision).

### C. Post-Conviction Proceedings

Illinois courts evaluate post-conviction petitions using a three-stage process, *People v. Knapp*, 181 N.E.3d 875, 882 (Ill. 2020), which asks first whether the petitioner has "present[ed] the gist of a constitutional claim" and second if the petitioner has made "a substantial showing of a constitutional violation, *People v. Edwards*, 757 N.E.2d 442, 445–46 (Ill. 2001) (cleaned up). If the petitioner clears this second stage, then the trial court at the third stage holds an evidentiary hearing. *Id.* at 446.

Ealy filed a counseled post-conviction petition, which made it to the second stage at the trial level. *Ealy*, 249 N.E.3d at 969, 971. As relevant to Ealy's federal habeas petition, Ealy argued that (1) the trial court abused its discretion by denying his motion for severance, Common Law Record at 299–300, 314, 317;[4] R. 41-16, Exh. 15, Supp. to Common Law Record at 6–7; *Ealy*, 249 N.E.3d at 972; and (2) his counsel on direct appeal was ineffective for not challenging the trial court's denial of his severance motion, Common Law Record at 314, 318–19; *Ealy*, 249 N.E.3d at 974. His post-conviction counsel also asserted a claim that his trial counsel was ineffective on the severance issue, Supp. to Common Law Record at 6–7, and the State responded to this argument, *Ealy*, 249 N.E.3d at 973. The trial court dismissed Ealy's post-conviction petition, concluding that Ealy's counsel at trial raised the severance issue and thus was not ineffective and that his appellate counsel had no obligation to raise every issue. *Id.* at 974.

Ealy filed a pro se appeal from the trial court's dismissal of his post-conviction petition. *Ealy*, 249 N.E.3d at 974. Ealy's briefs on appeal focused on his appellate counsel's ineffectiveness for failing to challenge the trial court's denial of his

---

[4]After Ealy's post-conviction counsel submitted the initial petition and responded to the State's motion to dismiss, he moved to withdraw. *Ealy*, 249 N.E.3d at 973. In the time after his post-conviction counsel moved to withdraw but before the trial court appointed him a public defender, *see id.*, Ealy filed at least three pro se responses to the State's motion to dismiss, *see* Common Law Record at 313–27, 331–56, 425–35; R. 41-15, Exh. 14-2, Common Law Record Vol. 2 at 1–4, as well as a pro se amended post-conviction petition, Common Law Record at 368–406. Because Ealy's new post-conviction counsel adopted Ealy's pro se filings, *see Ealy*, 249 N.E.3d at 973–74, and because each of Ealy's pro se responses is identical in substance on the severance issue, *see* Common Law Record at 317–19, 335–37, 349–50, 429–31, the Court cites only one.

severance motion, *see id.*, and he also argued directly that the trial court erred in denying that motion, *see* R. 41-7, Exh. 7, Post-Conviction First Supp. at 7; R. 41-10, Exh. 10, Post-Conviction Reply at 5. The Illinois Appellate Court affirmed the dismissal of his post-conviction petition. *Ealy*, 249 N.E.3d at 969. On the severance issue, the Illinois Appellate Court concluded that Ealy's arguments lacked merit because his and Massey's defenses were not antagonistic, that the trial court thus did not abuse its discretion, and that Ealy's appellate counsel was not ineffective. *Id.* at 976–79.

Ealy then filed a pro se petition for leave to appeal to the Illinois Supreme Court. R. 41-13, Exh. 13, Pet. for Leave to Appeal. Among other arguments, Ealy renewed his contentions that his appellate counsel was ineffective and that the trial court failed to uphold its "continuing duty" to stop the joint trial at any point when severance appeared necessary. *Id.* at 17–22. The Illinois Supreme Court denied Ealy's petition for leave to appeal. *People v. Ealy*, 244 N.E.3d 270 (Ill. Sep. 25, 2024) (unpublished table decision).

## II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (cleaned up). A habeas petitioner must fully and fairly

present his federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

If a petitioner has failed to properly assert his federal claims at each level of state review, then his claims are procedurally defaulted. *See McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). A claim is also procedurally defaulted when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, making the state court's refusal to adjudicate the claim an independent and adequate state ground for denying federal review. *Cone v. Bell*, 556 U.S. 449, 465 (2009). Either way, procedural default precludes federal-court review of a petitioner's habeas claims. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012).

A habeas petitioner may overcome procedural default, however, either by demonstrating cause for the default and actual prejudice from the default, or by showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Relevant here, a fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Thus, procedural default, although otherwise a bar to federal habeas review, may be excused in certain circumstances.

If the petitioner successfully runs the procedural-default gauntlet for a particular claim, then a federal court can at least consider the merits of that federal habeas

claim. But under AEDPA, a federal court may not grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

Alternatively, under the "unreasonable application" path of AEDPA, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams*, 529 U.S. at 413. But even if a federal court independently concludes that the relevant state court decision applied clearly established federal law erroneously, still the writ does not necessarily issue; rather, the state court's application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). "This is a difficult standard to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

## III. Analysis

In his habeas petition, Ealy presents three versions of his theory that he should have been tried separately from Massey.[5] First, he contends that the trial court abused its discretion in denying his motion for severance. Am. Pet. at 14–15. Second, Ealy argues that his trial counsel was ineffective for failing to renew the motion for severance and failing to press the issue more at trial. *Id.* at 16–17. Third, Ealy asserts that his appellate counsel was ineffective for not challenging the trial court's denial of the motion for severance on direct appeal. *Id.* at 16.

### A. Ineffective Assistance of Trial Counsel

The Court begins with Ealy's second argument, that his trial counsel was ineffective for not seeking a severance more aggressively. The State argues that Ealy has procedurally defaulted this claim because he did not raise it in state court. R. 40, State's Resp. at 6. Ealy concedes that he did not raise these claims in state court but argues that he raised the core substance of this claim when he made arguments about his *appellate* counsel being ineffective. R. 42, Reply at 3.

Ealy has procedurally defaulted this claim. On appeal in the Illinois Appellate Court and later in seeking to appeal to the Illinois Supreme Court, Ealy's argument focused on whether "*appellate* counsel was ineffective for failing to raise a denial of

---

[5]Ealy originally raised other arguments. *See* R. 1, Pet. Consistent with this Court's prior instructions, *see* R. 15, 03/20/25 Minute Entry; R. 25, 07/24/25 Order, as well as Ealy's own representations, *see* R. 10, Mot. to Unfile; R. 11, Mot. to Amend, the Court considers only the claims raised in Ealy's amended habeas petition. *See also Hawkins v. Sevier*, 169 F.4th 749, 753 (7th Cir. 2026) ("[A]mended habeas petitions generally supersede their predecessors.").

severance." *See, e.g.*, R. 41-6, Post-Conviction Opening Br. at 1, 3 (emphasis added); *see also* Post-Conviction First Supp. at 2, 4; Post-Conviction Reply at 2; Pet. for Leave to Appeal at 5. Indeed, rather than fully criticize trial counsel, Ealy underscores at various points that his trial counsel *properly preserved* this issue for appellate review. *See, e.g.*, Post-Conviction Opening Br. at 3; Post-Conviction First Supp. at 4; Am. Pet. at 16.

Making an argument about *appellate* counsel's ineffectiveness is not enough to preserve a separate claim about *trial* counsel. The two are "independent constitutional claims," *Gray v. Hardy*, 598 F.3d 324, 330 (7th Cir. 2010), and a petitioner can procedurally default one while preserving the other for federal review, *see Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). Ealy thus failed to present a claim for ineffective assistance of trial counsel through one complete round of state court review, so he has procedurally defaulted the claim. *Boerckel*, 526 U.S. at 845.

Ealy suggests that his procedural default should be overlooked. Although he cites two cases that supply exceptions, Reply at 3, namely (1) cause and prejudice and (2) actual innocence, *see also House*, 547 U.S. at 536, he develops no argument under either theory. He thus has waived any argument to excuse his procedural default. *See Franco v. Richland Refrigerated Sols., LLC*, 128 F.4th 857, 864 (7th Cir. 2025) (noting that arguments not meaningfully developed are waived).

## B. Ineffective Assistance of Appellate Counsel

Moving on, Ealy did properly preserve for federal review the claim that counsel on direct appeal was ineffective for failing to challenge the trial court's denial of the

motion for severance. The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). To prove that he was denied that right, Ealy must show first "that counsel's performance was deficient" and second "that the deficient performance prejudiced the defense." *Id.* at 687. Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Prejudice meanwhile requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" such that "confidence in the outcome" is "undermine[d]." *Id.* at 694. For claims about appellate counsel, the question on the performance element is whether counsel "abandoned a nonfrivolous claim that was both obvious and clearly stronger" and lacked "a strategic justification." *Ramirez v. Tegels*, 963 F.3d 604, 613 (7th Cir. 2020) (cleaned up).

The Illinois Appellate Court concluded that Ealy's appellate counsel did not deficiently perform and that Ealy was not prejudiced. *Ealy*, 249 N.E.3d at 976. This is the "last reasoned state court opinion" to address Ealy's claim, *Carrion v. Butler*, 835 F.3d 764, 772 (7th Cir. 2016) (cleaned up), and because the opinion addressed both performance and prejudice elements, this Court's review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *cf. also Thomas v. Clements*, 789 F.3d 760, 766–68 (7th Cir. 2015). One layer of deference is required under 28 U.S.C. § 2254(d), and another is owed to counsel's performance under the *Strickland* standard. *Cullen*, 563 U.S. at 189–90.

14

Ealy's severance argument lacks merit, so his appellate counsel did not deficiently perform or prejudice him by abandoning a clearly stronger argument. Ealy relies on five instances of evidence or testimony presented at trial to suggest that his and Massey's defenses were "so antagonistic that a fair trial can be achieved only through severance." *People v. Harris*, 526 N.E.2d 335, 355 (Ill. 1988).[6] He highlights (1) Johns confirming on cross-examination that she spoke only with Ealy and not Massey; (2) Brown clarifying on cross-examination that she recognized Ealy's, not Massey's, voice on the phone with Carpenter; (3) Massey's counsel eliciting testimony about statements by Carpenter, who did not testify and thus could not be confronted by Ealy; (4) Brown's testimony on cross-examination about Ealy returning to the scene to recover his phone; and (5) the DNA and physical evidence presented by the State that implicated him, but not Massey. Am. Pet. at 17–24.

But none of the evidence was so antagonistic that Ealy was deprived of a fair trial. Most of the testimony that Massey's counsel elicited "was merely cumulative, repeating the testimony already received" by the State's direct examination of these witnesses, *People v. Lee*, 429 N.E.2d 461, 464 (Ill. 1981); *see also Stomner v. Kolb*,

---

[6]The federal standard is similar. *See Zafiro v. United States*, 506 U.S. 534, 540 (1993). But that standard is tied in part to the Federal Rules of Criminal Procedure, which do not apply to Ealy's trial. *See* Fed. R. Crim. P. 1(a)(1). Of course, the erroneous denial of a motion for severance can implicate federal constitutional rights, *see, e.g.*, *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986) (right to due process); *Bruton v. United States*, 391 U.S. 123, 126–28 (1968) (right to confront accusing co-defendant), which could have been vindicated by Ealy's counsel in state court, *Engle v. Isaac*, 456 U.S. 107, 128 (1982). So the Court cites federal cases discussing whether the denial of a motion for severance resulted in an unfair trial for the proposition that Ealy's trial was not unfair under the Federal Rules of Criminal Procedure and thus also not unfair under the more demanding constitutional standards.

903 F.2d 1123, 1128 (7th Cir. 1990), and the defense that Massey's counsel pressed in opening and closing was the same as Ealy: that Johns and Brown had reason to lie and that no reliable evidence tied Massey (or Ealy) to the shooting of Boyd. At most, Ealy points to one instance when Massey's counsel corrected Brown on cross-examination that, although she testified earlier that Carpenter called Massey, Carpenter in fact called Ealy. Not only was this testimony immaterial (no evidence reveals the contents of this phone call, and Brown testified that Ealy and Massey were physically together), but this isolated interaction did not deprive Ealy of a fair trial. The overwhelming evidence showed that Massey's counsel in opening and closing statements focused on discrediting the State's witnesses rather than blaming Ealy, so the co-defendants were unified. *Contra People v. Daugherty*, 468 N.E.2d 969, 973 (Ill. 1984) (providing "classic example of antagonistic defense" as defendants condemning each other and discrediting their co-defendants' witnesses); *United States v. Hendrix*, 752 F.2d 1226, 1232 (7th Cir. 1985) (requiring severance "only when the defenses are so antagonistic that the acceptance of one party's defense will preclude the acquittal of the other" (cleaned up)); *United States v. Centracchio*, 774 F.2d 856, 861 (7th Cir. 1985) (holding that "occasional friction or flare-up" insufficient for severance). Massey's counsel focused on exculpating his client, but he did not thereby condemn Ealy, to whom he owed no duty to exculpate.

Two more points are worth making about the evidence that Ealy cites. First, Ealy contends that the joint trial violated his rights under the Confrontation Clause because Massey's counsel caused Brown to testify about what Carpenter (who did not

16

testify) said. Am. Pet. at 21–22. Typically, Confrontation-Clause issues arise when a co-defendant gives a confession that inculpates a defendant on trial, and then at trial the confessing co-defendant chooses not to testify, preventing the defendant from confronting his accuser. *Bruton*, 391 U.S. at 126–28. That did not happen here because the statement attributed to Carpenter (that someone fired shots into the air while the second group remained at the party) is not a "confession" made by Massey that Ealy shot Boyd. *See United States v. Volpendesto*, 746 F.3d 273, 290–91 (7th Cir. 2014). And in any event, the admission of this statement would have been held harmless on direct appeal: it was duplicative of other testimony that shots had been fired at the party and Johns's statements about wanting to return to the party to "deal with the matter," and it was attenuated from any evidence the State offered to show that Ealy and Massey were responsible for shooting Boyd. *People v. Barner*, 30 N.E.3d 271, 285–86 (Ill. 2015) (outlining and applying harmless-error analysis to Confrontation Clause); *United States v. Graham*, 47 F.4th 561, 569–70 (7th Cir. 2022) (same).[7]

Second, the disparity in physical evidence also does not support severance unless that disparity is "overwhelming." *People v. Byron*, 506 N.E.2d 1247, 1252 (Ill.

---

[7]Ealy also likely procedurally defaulted this formulation of his claim for ineffective assistance based on the underlying denial of his severance motion. Part of the fair-presentment principle required Ealy to present "operative facts and controlling legal principles" to the state courts. *See Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018). For example, a petitioner can procedurally default a claim about counsel's failure to call one witness when his state post-conviction petition instead argued only about counsel's failure to call other witnesses. *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998). So too here: Ealy made other arguments about why his appellate counsel was ineffective for not appealing the denial of the motion for severance, but he did not suggest this theory about Carpenter or the Confrontation Clause.

1987); *see also United States v. Serpico*, 320 F.3d 691, 696 (7th Cir. 2003) (simple disparity not enough). It is true that more physical evidence (a fingerprint, his phone) tied Ealy to the scene, but most of the testimonial and physical evidence was admissible against both defendants, meaning severance was unnecessary. *See People v. Polk*, 254 N.E.3d 326, 384–85 (Ill. App. Ct. 2024).

Another, more fundamental reason supports appellate counsel's decision not to challenge the severance ruling: Ealy's trial counsel provided little, if any, basis for the motion. As described earlier, the "sole basis" for Ealy's trial counsel to move for severance was the motion itself, *Ealy*, 249 N.E.3d at 976; nothing else in the record supports the motion. And the post-trial motion contained a conclusory statement that the denial of the severance motion prejudiced Ealy, but there was no explanation in support. Common Law Record at 197. Ealy adds in his habeas petition that his trial counsel stated in a written motion that "the defense ha[d] reason to believe his co-defendant would present an antagonistic defense." Am. Pet. at 14. This filing is not in the record, but even if it were, it would be insufficient. For an Illinois appellate court to grant a new trial, a motion for severance must have contained specific grounds, and not a mere apprehension, to suspect antagonism. *People v. Gendron*, 243 N.E.2d 208, 212 (Ill. 1968); *Lee*, 429 N.E.2d at 463–64. So Ealy's appellate counsel did not deficiently perform, nor was Ealy prejudiced, by not appealing the denial of an unexplained motion for severance.

Because any challenge to the trial court's denial of Ealy's motion for severance lacked merit, Ealy's appellate counsel did not render ineffective assistance. And this

18

is especially true under the doubly deferential standard, deferring both to appellate counsel's professional judgment and to the Illinois Appellate Court's conclusion that "[v]ery little" of Massey's cross-examination of the State's witnesses was antagonistic. *Ealy*, 249 N.E.3d at 978–79.

### C. Trial Court Decision on Severance

The Court lastly addresses Ealy's argument that he is entitled to habeas relief directly because of the trial court's erroneous denial of his motion for severance. The State contends that Ealy's claim is not cognizable in a federal habeas petition because 28 U.S.C. § 2254(a) permits only challenges based on "the Constitution or laws or treaties of the United States" and not those based on state law. State's Resp. at 4–6. This is true to an extent: if motions for severance *never* implicated the Constitution, then this Court could not consider Ealy's claims in a habeas petition. *Fieldman v. Brannon*, 969 F.3d 792, 800 (7th Cir. 2020). So the Court agrees that any argument by Ealy that the trial court abused its discretion based only on *state* law would not be cognizable.

But as Ealy notes in reply and the Court has discussed, the erroneous denial of a motion for severance could in some instances rise to the level of a federal constitutional violation. Reply at 1–3; *Bruton*, 391 U.S. at 126–28; *Lane*, 474 U.S. at 446 n.8. Generally, the Seventh Circuit has recognized that improper joinder of criminal defendants can prejudice a defendant's "specific trial right[s]." *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001).

Even if Ealy's claim is cognizable in a federal habeas petition, the State argues that Ealy has procedurally defaulted it. State's Resp. at 5–6. In the State's view, Ealy both failed to reference any federal constitutional basis and failed to present it in his petition for leave to appeal to the Illinois Supreme Court. *Id.* But in determining whether Ealy fairly presented the federal issue to the state courts, his pro se filings must be liberally construed. *Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016). A liberal construction of Ealy's petition for leave to appeal supports Ealy's argument that he raised the claim to the Illinois Supreme Court: he discusses his belief that the testimony at trial was sufficiently prejudicial as to require reversal, and he argues that the trial court did not uphold its "continuing duty" to sever his trial from Massey's when that prejudice became more apparent. Pet. for Leave to Appeal at 17–22.

Nor does the lack of citations to federal case law result in procedural default. The test for fair presentment looks to four factors: (1) reliance on federal case law "that engage[s] in constitutional analysis," (2) reliance on state case law that analyzes federal constitutional claims "to similar facts," (3) whether the claim is framed "in terms so particular as to call to mind a specific constitutional right," and (4) if the petitioner "alleges a pattern of facts within the mainstream of constitutional litigation." *Thomas*, 822 F.3d at 385 (cleaned up). Ealy relies on state cases that address similar constitutional claims, *see, e.g.*, Pet. for Leave to Appeal at 17, 20 (first citing *People v. Rodriguez*, 680 N.E.2d 757, 765–67 (Ill. App. Ct. 1997) (discussing Sixth Amendment jury-trial rights in severance-motion context) then citing *People v. Bean*, 485 N.E.2d 349, 354–59 (Ill. 1985) (discussing Fifth Amendment right against self-

20

incrimination in same context)), and Ealy centers in his petition an argument that he thus was deprived his right to a fair trial, *see id.* at 20–22; *see also Lane*, 474 U.S. at 446 n.8 (framing right to fair trial under Fifth Amendment). And these state cases—alongside the earlier cited federal cases—show that Ealy describes a pattern of facts well "within the mainstream of constitutional litigation." *Thomas*, 822 F.3d at 385 (cleaned up).[8]

The Court sees no other basis to consider Ealy's freestanding claim as procedurally defaulted. First, it is generally true that claims that could have been raised on direct appeal (like one challenging the trial court's denial of a severance motion) but were not raised are procedurally defaulted. *See Mata v. Baker*, 74 F.4th 480, 486 (7th Cir. 2023). But the Illinois Appellate Court addressed the merits of Ealy's claim, *see Ealy*, 249 N.E.3d at 976–79 (concluding that the trial court did not abuse its discretion), so Ealy did not procedurally default it, *Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)).

Second, even if this could be a basis to conclude that Ealy procedurally defaulted, the State does not articulate it in the short paragraph devoted to procedural default. *See Eichwedel v. Chandler*, 696 F.3d 660, 669–70 (7th Cir. 2012) (noting that procedural default is generally waivable by the State); *see also Frey Corp. v. City of*

---

[8]The same is true for Ealy's filings with the trial court, *see, e.g.*, Supp. to Common Law Record at 6–7 (framing severance argument as issue of due process); Common Law Record at 314, 317–19 (same and citing cases), and with the Illinois Appellate Court, Post-Conviction First Supp. at 2, 4–8; Post-Conviction Reply at 2–5. So Ealy fairly presented his federal constitutional claim through one complete round of state court review. *Boerckel*, 526 U.S. at 845.

*Peoria*, 735 F.3d 505, 509 (7th Cir. 2013) ("A party waives the ability to make a specific argument for the first time on appeal when the party fails to present that specific argument … , even though the issue may have been … [stated] in more general terms." (cleaned up)). So the core of Ealy's claim that the trial court abused its discretion in denying his motion for severance can be considered. But as discussed earlier, Ealy's appellate counsel was not ineffective because this argument lacks merit, so the freestanding claim about the same severance motion fails.

## IV. Conclusion

For the reasons discussed, Ealy's amended habeas petition, R. 18, is denied. The Court also denies Ealy's request for an evidentiary hearing. Ealy does not identify which factual allegations require a hearing, so even assuming that he could receive an evidentiary hearing, *see* 28 U.S.C. § 2254(e)(2), there are no "factual allegations, which, if true, would entitle [Ealy] to federal habeas relief," *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Ealy's factual allegations were consistent with the state court record, and they do not entitle him to habeas relief.

The Court also declines to issue a certificate of appealability. Under 28 U.S.C. § 2253, "an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the circuit justice or judge first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, "a petitioner must show

22

that reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (cleaned up). For the reasons discussed above, Ealy has not made a substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges in his habeas petition should have been resolved differently or determine that Ealy deserves encouragement to proceed further with his habeas claims. *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). The state courts' decisions on all of Ealy's claims were well within the deference owed to state courts under AEDPA.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 5, 2026